# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Metwaly, Hassan Alsotohy and
Mahmoud, Marem Medhat,

              Plaintiffs,

                          Case No. 1:20-cv-1289-MLB

v.

William Barr, in his capacity as
United States Attorney General, et
al.,

              Defendants.

_____/

## OPINION & ORDER

Plaintiffs Hassan Alsotohy Metwaly and Maarem Medhat Mahmoud, citizens of Egypt, seek judicial review of a decision by the United States Citizenship and Immigration Service ("USCIS") denying their Form I-485 applications for adjustment of status. They claim Defendants Former United States Attorney General William Barr, Acting Secretary of the Department of Homeland Security Chad Wolf, Senior Official Performing the Duties of the Director of USCIS Kenneth Cuccinelli, Director of the Texas Service Center Gregory Richardson, and

Director of the National Benefits Center Robert Cowan improperly denied their application.[1]  Defendants move to dismiss.  (Dkt. 17.)  The Court grants Defendants' motion.

## I.   Background

Plaintiff Metwaly entered the United States on a visitor visa in June 2015.  (Dkt. 1 ¶ 17.)  His period of stay expired on December 19, 2015.  (*Id.*)  On November 19, 2015, he applied for asylum and withholding removal through Department of Homeland Security Form I-589.  (*Id.* ¶ 18.)  Plaintiff Metwaly received a receipt stating, "You may remain in the U.S. until your asylum application is decided."  (Dkt. 1-3.)  His asylum application remains pending.  (Dkt. 1 ¶ 18.)

On December 5, 2018, Plaintiff Metwaly's employer filed Form-140, a petition to allow Plaintiff Metwaly to work in the United States on a permanent basis.  (*Id.* ¶ 19.)  Both Plaintiffs then filed their respective Form I-485 applications to adjust their status to permanent residents.  (*Id.*)  USCIS requested more information about Plaintiffs' maintenance

---

[1] The Court acknowledges certain Defendants, who are being sued in their official capacity, are the former employees of the listed government positions.

of lawful status, and Plaintiffs responded with copies of Plaintiff Metwaly's Form I-589 receipt.  (*Id.* ¶ 20.)

On September 4, 2019, USCIS denied Plaintiffs' I-485 applications.[2] (*Id.* ¶ 21.)  In its decision, USCIS explained that the period during which Plaintiff Metwaly had "failed to maintain a lawful status or violated the terms and conditions of [his] admission [had] exceed[ed] the 180 days excusable under INA 245(k)."  (*Id.*)  Plaintiff Metwaly filed a Form I-290B Motion to Reconsider which USCIS also denied.  (*Id.* ¶¶ 22–23.)

On March 24, 2020, Plaintiffs initiated this action challenging USCIS's denial of Plaintiffs' adjustment applications.  (*See* Dkt. 1.) Plaintiffs assert claims against Defendants for violating the Administrative Procedure Act (APA), Immigration and Nationality Act (INA) and its implementing regulations, and (maybe) the Due Process Clause of the Unites States Constitution. (*Id.* ¶¶ 25–50.) Plaintiffs allege Defendants' findings were arbitrary, capricious, and not in accordance with the law.  (*Id.* ¶¶ 25–34.)  Plaintiffs also allege it was "legally incorrect, manifestly unjust, an abuse of discretion and in violation of the

---

[2] Because Plaintiff Mahmoud's I-485 was derivative of Plaintiff Metwaly's, her denial letter only referred to the fact that his had been denied. (Dkt. 1 ¶ 21.)

law" for the decision denying Plaintiffs' application to simply refer to USCIS's discretionary authority rather than explaining the factors and describing how it weighed them. (*Id.* ¶¶ 41–42.) Plaintiffs argue that, because the denial of Plaintiff Metwaly's Form I-485 was legally incorrect, manifestly unjust, arbitrary and capricious and in violation of the law, the denial of Plaintiff Mahmoud's Form I-485 was also legally incorrect, manifestly unjust, arbitrary and capricious and not in accordance with the law. (*Id.* ¶¶ 43–45.) Plaintiffs finally allege that injunctive relief for irreparable harm is justified because negative action on Plaintiff Metwaly's Form I-589 at this time would constitute an illegal and manifestly unjust attempt to interfere with Plaintiffs' eligibility for adjustment of status after those applications were duly filed and in retaliation for filing this lawsuit. (*Id.* ¶¶ 46–50.) Defendants move to dismiss the complaint under Rule 12(b)(1) and 12(b)(6). (Dkt. 17.)

## II.   Legal Standard

### A.   Rule 12(b)(1)

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction. "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction,

a court must zealously insure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). It is presumed that a federal court lacks jurisdiction in a case until the plaintiff shows the court has jurisdiction over the subject matter. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A defendant may attack subject matter jurisdiction under Rule 12(b)(1) in two ways—a facial attack or a factual attack. *See McElmurray v. Consol. Gov't. of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)) (alterations in original). A factual attack, however, challenges the underlying facts supporting the Court's jurisdiction. *Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169 (11th Cir. 2011). When evaluating a factual attack, "the district court is not obligated to take the allegations in the complaint as true." *Id.* Instead, the Court "may consider extrinsic evidence such as deposition testimony and affidavits." *Id.* (quotation

omitted).  And from this evidence, the Court may "independently weigh the facts and is not constrained to view them in the light most favorable to the non-movant."  *Id.*

## B.   Rule 12(b)(6)

A court may dismiss a pleading for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).   Even so, a complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' "  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Put another way, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*   This so-called "plausibility

standard" is not a probability requirement. *Id.* Even if a plaintiff will probably not recover, a complaint may still survive a motion to dismiss for failure to state a claim, and a court reviewing such a motion should bear in mind that it is testing the sufficiency of the complaint, not the merits of the case. *Twombly*, 550 U.S. at 556; *see also AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) ("[N]otice pleading does not require a plaintiff to specifically plead every element of his cause of action, [but] a complaint must still contain enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory.'" (quoting *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001))).

Rule 12(b)(6) is an appropriate method for resolving a question of law. *See Neitzke v. Williams*, 490 U.S. 319, 328 (1989) ("When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate."). Here, the Rule 12(b)(6) analysis does not turn on applying alleged facts to legal standards. Rather, the analysis focuses on pure legal analysis under which Plaintiffs' complaint can or cannot state a cognizable claim for relief.

## III.  Discussion

### A.    Subject Matter Jurisdiction

According to the APA, "final agency action[s] for which there is no other adequate remedy in a court are subject to judicial review."  5 U.S.C. § 704.  Federal jurisdiction is thus lacking under Rule 12(b)(1) when the administration's action is not final.  *See LabMD, Inc. v. F.T.C.*, 776 F.3d 1275, 1278 (11th Cir. 2015).  This allows an administrative agency the opportunity to conduct its own internal review of a decision, apply its institutional expertise, and correct any errors.  Judicial review is thus unavailable until "an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule."  *Darby v. Cisneros*, 509 U.S. 137, 146 (1993).

The parties disagree as to whether Plaintiffs have exhausted all administrative remedies—Plaintiffs insisting they are out of options and Defendants insisting they can still push their adjustment argument in a subsequent removal proceeding.  Defendants are correct that, if and when, USCIS begins removal proceedings, Plaintiffs may renew their application for adjustment of status.  An immigration judge hearing a removal proceeding "has exclusive jurisdiction to adjudicate any

8

application for adjustment of status the alien may file." 8 C.F.R.
§ 1245.2(a)(1).[3]  As such, the Eleventh Circuit has determined an alien in
a removal proceeding does not have a final decision on an adjustment of
status so as to allow judicial review. *Ibarra v. Swacina*, 628 F.3d 1269,
1270 n.2 (11th Cir. 2010).[4]

Plaintiffs, however, have not yet been placed in removal
proceedings. And the Eleventh Circuit has not yet determined whether
an alien in Plaintiffs' situation has exhausted all administrative
remedies (and thus a district court has jurisdiction under the APA). *Id.*

---

[3] The Court understands some find the term "alien" dehumanizing and
offensive. Nicole Acevedo, *Biden Seeks to Replace 'Alien' with Less
'Dehumanizing Term' in Immigration Law*, NBC News (Jan. 22, 2021,
3:34 PM), https://www.nbcnews.com/news/latino/biden-seeks-replace-
alien-less-dehumanizing-term-immigration-laws-n1255350. The current
administration is considering legislation to remove that term from U.S.
Immigration laws. Jorge Lopez and Elizabeth Whiting, *President Biden
Issues New Executive Orders and Supports Comprehensive Reform of
Immigration Policy*, JD Supra (Jan. 25, 2021),
https://www.jdsupra.com/legalnews/president-biden-issues-new-
executive-7739651/. The Court uses the term simply (and only) because
it is the term used in the laws at issue here and because the parties use
that term in all filings.

[4] Defendants note in *Ibarra*, "the plaintiff was not yet in removal
proceedings when the district court dismissed the case for lack of
jurisdiction, and the Eleventh Circuit affirmed the dismissal." 628 F.3d
at 1270. Once the case reached the Eleventh Circuit, however, the
plaintiff was in active removal proceedings and had renewed her
adjustment application in the proceedings. *Id.*

at 1270 n.2 ("We do not have before us and therefore do not decide whether we have jurisdiction under the APA if the alien has not yet been placed in removal proceedings.").  Other circuits disagree with each other on the issue. *Compare McBrearty v. Perryman*, 212 F.3d 985, 987 (7th Cir. 2000) ("The [plaintiffs'] suit was premature, since, as the plaintiffs acknowledge, they could obtain review of the district director's decision [denying adjustment of status] by the Board of Immigration Appeals if and when the immigration service institutes removal (i.e., deportation) proceedings against them.") *and Cardoso v. Reno*, 216 F.3d 512, 518 (5th Cir. 2000) (holding that the plaintiff has not exhausted her administrative remedies because she may renew her request for adjustment of status upon the commencement of removal proceedings) *with Cabaccang v. USCIS*, 627 F.3d 1313, 1317 (9th Cir. 2010) ("Without a pending removal proceeding, a denial of status adjustment is final because there is no appeal to a superior administrative authority.") *and Pinho v. Gonzales*, 432 F.3d 193, 202 (3d Cir. 2005) (holding that an adjustment of status "decision is final where there are no deportation proceedings pending in which the decision might be reopened or challenged").

Relying on *Cardoso*, *Ibarra*, and *McBrearty*, Defendants maintain the Court lacks jurisdiction to review the adjustment decision even though removal proceedings have not yet been initiated against Plaintiffs.[5]  (Dkt. 17-1 at 7.)  Plaintiffs argue the decision denying their Form I-485 applications is final under the plain language of section 704. (Dkt. 18 at 8–9.)  Plaintiffs also rely on *Pinho* and *Cabaccang* for the contention that a denial of status adjustment is final without a pending removal proceeding.[6]

The Court recognizes there is a circuit split and acknowledges *Ibarra* is not controlling when there is no pending removal proceeding. The Supreme Court discussed the APA's requirement that plaintiffs

---

[5] Defendants also rely on *Nolasco v. Crockett*, 958 F.3d 384 (5th Cir. 2020), which affirmed a dismissal for lack of jurisdiction under *Cardoso*. The Fifth Circuit later withdrew and superseded that opinion on rehearing.  *See Nolasco v. Crockett*, 978 F.3d 955 (5th Cir. 2020).  The new opinion discussed the jurisdiction-stripping statute and was not based on the panel's previous decision.

[6] Plaintiffs also rely on *Hosseini v. Johnson*, 826 F.3d 354 (6th Cir. 2016). In that case, the Sixth Circuit agreed with the Third Circuit "that the agency's denial of an application for adjustment of status was final within the meaning of the APA, because no removal proceedings were pending." *Hosseini*, 826 F.3d at 361.  The plaintiff in *Hosseini*, however, had been granted asylum.  *Id.* at 356.  Thus, removal proceedings were not even possible when the plaintiff's application was denied because his asylum status had not been terminated.  *Id.* at 362.  Plaintiff Metwaly's asylum application is still pending, and *Hosseini* is inapplicable.

exhaust available administrative remedies before seeking judicial review in *Darby* and explained "[t]he purpose of [§ 704 of the APA] was to permit agencies to require an appeal to 'superior agency authority' before an examiner's initial decision became final." 509 U.S. at 152. The Supreme Court further explained that "[a]gencies may avoid the finality of an initial decision, first, by adopting a rule that an agency appeal be taken before judicial review is available, and, second, by providing that the initial decision would be 'inoperative' pending appeal. Otherwise, the initial decision becomes final and the aggrieved party is entitled to judicial review." *Id.* The Court concluded that "where the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Id.* at 154. As a result, "Courts are not free to impose an exhaustion requirement as a rule of judicial administration where the agency action has already become 'final.' " *Id.*

That answers the question here. The statute applied against Plaintiffs does not require (or even permit) Plaintiffs to appeal the decision denying their adjustment of status to a superior agency

authority.  The law actually states there is ***no*** administrative appeal from a decision denying a Form I-485 application for status adjustment.  *See* 8 C.F.R. § 245.2(a)(5)(ii) ("Under section 245 of the Act. . . . No appeal lies from the denial of an application by the director, but the applicant, if not an arriving alien, retains the right to renew his or her application in proceedings under 8 CFR part 240."); 8 C.F.R. § 1245.2(a)(5)(ii) ("No appeal lies from the denial of an application by the director, but the applicant, if not an arriving alien, retains the right to renew his or her application in proceedings under 8 CFR part 1240.") Indeed, the Director's decision letter expressly warned Plaintiffs "there was no appeal from [his] decision" denying their Form I-485 adjustment.  (Dkt. 1-7 at 4.)[7]  That the law allows them to "renew" their application in a removal proceeding does not satisfy the Supreme Court's requirement of "a rule that an agency appeal be taken before judicial review is available."

---

[7] In an earlier paragraph of the letter, the Director referred to Plaintiffs' decision "to file a motion or appeal of this decision."  (Dkt. 1-7 at 6.)  It is unclear why he referred to an appeal when he made it very clear "[t]here is no appeal from this decision" but that Plaintiffs could file only a "motion to reopen or reconsider."  (*Id.*)  They did, and USCIS denied it. (Dkt. 1 ¶ 23.)  Regardless of this slight confusion on the Director's part, the statute neither requires nor permits an appeal.

*Darby*, 509 U.S. at 152.  A renewal of a request is not an appeal from the denial of a previous request.

Moreover, neither the right to renew their application nor any other part of the statute renders the Director's decision "inoperative pending appeal"—the second prong of the *Darby* requirement.  *Id.*  The Director's decision specifically told Plaintiffs they were "not authorized to remain in the United States" and that, if they did not "depart within 33 days of the date of [the Director's] letter," their continued presence in the United States "may result in [Plaintiffs] being removed from the United States and found ineligible for a future visa or other U.S. immigration benefit." (Dkt. 1-7 at 4.)  That the Director told them to leave is antithetical to any suggestion the decision was inoperative pending additional review or renewal during a subsequent removal proceeding.

The pendency of Plaintiff Metwaly's asylum application strengthens Defendants' position.[8]  But it does not change the fact that the law does not require (or permit) Plaintiffs to appeal the decision or hold the decision in abeyance pending that appeal.   Plaintiffs have met

---

[8] *See Duque Mendez v. Cuccinelli*, 467 F. Supp. 3d 1249 (S.D. Fla. June 15, 2020).

their burden of proving the statutory framework in which USCIS rendered its decision does not meet the standard set forth by the Supreme Court in *Darby*. The decision is thus final and reviewable by this Court. *See Kokkonen*, 511 U.S. at 377 ("It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" (internal citations omitted)).

## B.    Failure to State a Claim

Defendants argue Plaintiffs are not entitled to relief because USCIS's denial was not arbitrary and capricious and was in accordance with the law. The Court agrees.

### 1.    Administrative Procedure Act

Under the APA, a reviewing court may set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency acts in an arbitrary and capricious manner if it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible

that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983).  The agency decision "is entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971).  The party challenging the agency's action bears the burden of proof.  *See Legal Envtl. Assistance Found., Inc. v. U.S. E.P.A.*, 276 F.3d 1253, 1265 (11th Cir. 2001).

Defendants argue USCIS's decision was not arbitrary and capricious because (1) Plaintiff Metwaly was ineligible to adjust his status, (2) Plaintiff Metwaly was in unlawful immigration status when he filed his I-485, and (3) the statutory and regulatory processes to extend, change, or maintain nonimmigrant status do not include an application for asylum.  (Dkt. 17-1 at 9–19.)

Section 245 of the INA sets forth prerequisites necessary for an applicant to adjust his or her immigration status.  *See* 8 U.S.C. § 1255.  It says an alien's status may be adjusted to that of a lawful permanent resident if "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is

immediately available to him at the time his application is filed."  It disqualifies from status adjustment an alien "who is in unlawful immigration status on the date of filing the application for adjustment of status or who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States."  USCIS found that Plaintiff Metwaly was ineligible for adjustment under both bars.[9]  (Dkt. 1-7.)

Plaintiffs did not have "lawful" immigration status on December 5, 2018—the day they submitted their applications for adjustment of status. For purposes of 8 U.S.C. § 1255(c)(2), "lawful immigration status" only describes the immigration status of an individual who is:

> (i) In lawful permanent resident status;
> (ii) An alien admitted to the United States in nonimmigrant status as defined in section 101(a)(15) of the Act, whose initial period of admission has not expired or whose nonimmigrant status has been extended in accordance with part 214 of this chapter;
> (iii) In refugee status under section 207 of the Act, such status not having been revoked;
> (iv) In asylee status under section 208 of the Act, such status not having been revoked;

---

[9] USCIS determined Plaintiff Metwaly failed to maintain continuously a lawful status since entry into the United States—from the expiration of his B2 visa on December 19, 2015 until the receipt date of his Form I-485 on December 5, 2018.  (Dkt. 1-7.)

(v) In parole status which has not expired, been revoked or terminated; or

(vi) Eligible for the benefits of Public Law 101–238 (the Immigration Nursing Relief Act of 1989) and files an application for adjustment of status on or before October 17, 1991.

*See* 8 C.F.R. § 245.1(d)(1).

Plaintiff Metwaly did not fall into any of the above categories when he submitted his I-485 because his visitor visa had expired and had not been extended.  Plaintiff Metwaly was no longer in "lawful immigration status."  Being an asylum seeker is not one of the six grounds defined as "lawful immigration status."  Because his visitor visa had expired by the time he applied for adjustment and his pending asylum application did not confer lawful immigration status, Plaintiff Metwaly was not eligible for adjustment as a matter of law.  *See Kavafoglu v. Nielsen*, No. 4:18-CV-3512, 2019 WL 172865, at *3 (S.D. Tex. Jan. 11, 2019); *Duque Mendez*, 467 F. Supp. 3d at 1259–60.

Plaintiff Metwaly also failed to continuously maintain lawful immigration status while in the United States as he remained in the country after his visitor visa expired.  He also makes no allegation to show his failure to do so was legally through no fault of his own or for technical reasons.  A nonimmigrant can maintain status only by

18

changing to another nonimmigrant status or extending the same nonimmigrant status. *See* 8 U.S.C. § 1258 (statutory basis for change of nonimmigrant status to another nonimmigrant status); 8 C.F.R. § 214.1 (regulatory provisions setting forth process to extend or maintain nonimmigrant status). There is no statutory or regulatory mechanism by which a nonimmigrant can maintain lawful status by changing to asylum status. *See Kavafoglu*, 2019 WL 172865, at *3 ("Although the record reflects that an asylum application was filed on July 1, 2016, which encompassed the entire family, the plaintiffs mere filing of that application, without more, did not create or establish any new, 'lawful' status on their behalf.").

Section 1255(c)(2) makes ineligible for adjustment an alien "who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States." 8 U.S.C. § 1255(c)(2). The regulations provide that "[t]he parenthetical phrase other than through no fault of his or her own or for technical reasons" refers to, in pertinent part, "[a] technical violation resulting from inaction of [USCIS] (as for example, where an applicant establishes that he or she properly filed a timely request to maintain

status and [USCIS] has not yet acted on that request)."   8 C.F.R.

§ 245.1(d)(2)(ii).  Plaintiff Metwaly's asylum application is not a request

to maintain status.   Under the no fault/technical reasons exception, "a

technical violation occurs when the USCIS fails to timely act on a request

to maintain or extend an existing status."[10]  *Kavafoglu*, 2019 WL 172865,

at *4.  Here, as in *Kavafoglu* and *Duque Mendez*, "[P]laintiffs did not seek

to maintain a 'lawful' status during the pendency of their asylum

application.   Instead, they sought to utilize their status as asylum

seekers to bridge the divide between their expired visitor status and that

---

[10] Plaintiffs rely on the decision in *Sayin v. United States*, No. 1:18-CV-643, 2018 WL 4624827 (W.D. Tex. Sept. 26, 2018), for the contention that "when a person has done everything they can understand to follow the law by entering this country with a visa and then applying for asylum with the visa period unexpired and then conducting themselves according to the terms of all notices received relating to the asylum application, they should not be barred from adjusting status by section 1255(c)(2) once they had an opportunity to do so."  (Dkt. 18 at 15.)  Like the court in *Kavafoglu*, this Court determines *Sayin* is not controlling here. *Kavafoglu*, 2019 WL 172865, at *4.  "It is clear that a technical violation occurs when the USCIS fails to timely act on a request to maintain or extend an existing status.   That is not the case here."  *Id.* (internal citations omitted).  The Court notes Plaintiff Metwaly received a receipt stating, "You may remain in the U.S. until your asylum application is decided."  (Dkt. 1-3.)  Lawful status and lawful presence, however, are distinct concepts. *See Dhuka v. Holder*, 716 F. 3d 149, 156 (5th Cir. 2013); *Chaudhry v. Holder*, 705 F. 3d 289, 292 (7th Cir. 2013) ("It is entirely possible for aliens to be lawfully present . . . even though their lawful status has expired.")

of a [lawful permanent resident]." *Id.*; *Duque Mendez*, 467 F. Supp. 3d at

1260.

Plaintiffs' reliance on *In re L-K-*, 23 I. & N. Dec. 677 (BIA 2004), is

misdirected.  In that case, the Board of Immigration Appeals ("BIA") held

an alien's failure to continuously maintain a lawful status was not "for

technical reasons" because the U.S. Department of Homeland Security

(DHS) acted on the alien's asylum application referring it to the

Immigration Court before the alien filed for adjustment of status.  *Id.* at

681.  The BIA explicitly declined to decide whether an alien's failure to

maintain lawful status is for technical reasons where the DHS has not

yet ruled on the alien's asylum application.  *Id.* at 679.  Plaintiffs contend

that they rely on *L-K-* "only as proof that their interpretation of the

statute has not been foreclosed."  (Dkt. 18 at 18.)  The BIA's holding that

the "technical violation" exception does not apply once the USCIS acts on

an asylum application, however, does not equate to a holding that the

exception applies before it acts.  *See Duque Mendez*, 467 F. Supp. 3d at

1261.

The allegations in Plaintiffs' complaint do not show USCIS's denial

of Plaintiff Metwaly's adjustment application was arbitrary, capricious,

an abuse of discretion, or contrary to law.  Plaintiffs are not entitled to relief for their claims Defendants violated the APA.

## 2.    Immigration and Nationality Act

Plaintiffs assert violations of the Immigration and Nationality Act and its implementing regulations, specifically focusing on 8 C.F.R. § 245.1(d)(2)(ii), in Counts One, Two, and Three.[11]  (Dkt. 1 at 11–16.) Regulation 245.1(d)(2)(ii) states that the parenthetical phrase "other than through no fault of his own or for technical reasons" shall be limited to a technical violation resulting from inaction of the USCIS.  *See* 8 C.F.R. § 245.1(d)(2)(ii).  Plaintiffs contend that, to the extent Defendants rest their argument on the language of this regulation, that argument "subverts [section 1255(c)'s] plain meaning: that any alien who falls into unlawful status 'through no fault of his own or for technical reasons' is not precluded from adjusting status under § 245(a)."  (Dkt. 18 at 13; *Mart v. Beebe*, No. CIV 99-1391, 2001 WL 13624, at *5 (D. Or. Jan. 5, 2001)).

---

[11] Plaintiffs specifically contend that, to the extent that USCIS's decision relied on 8 C.F.R. § 245.1(d)(2) without considering the statutory language itself, its decision was arbitrary and capricious and in violation of law as the regulation narrows the status and is ultra vires. (*See* Dkt. 1.)

The cases Plaintiffs cite, however, are neither binding nor persuasive.[12] USCIS also did not rest its decision only on § 245.1(d)(2)(ii) and Defendants do not rest their argument only on that regulation. Defendants note that "[t]here is no basis in the statutes, the regulations, or case law to find that an asylum seeker has lawful immigration status simply by virtue of submitting an asylum application." (Dkt. 17-1 at 12.) The Court finds persuasive Defendants contention that "[i]nterpreting the filing of an asylum application to provide lawful immigration status would contradict Congress's legislative scheme for asylum, would render

---

[12] The Court notes four of the five cases relied on solely address reliance on advice of counsel which is inapplicable here. *See Peters v. Barr*, 954 F.3d 1238, 1244 (9th Cir. 2020) ("Resolution of this appeal does not require us to declare the regulation invalid in its entirety. It is enough to hold, as we do today, that 8 C.F.R. § 1245.1(d)(2)(i) is invalid to the extent it excludes reasonable reliance on the assistance of counsel from the circumstances covered by the phrase 'other than through no fault of his own.'"); *Evangelista v. Johnson*, No. 14-13195, 2015 WL 12683978, at *4–5 (D. Mass. Oct. 30, 2015) ("To the extent that the USCIS failed to consider the actions of Evangelista's former attorney in its decision, its decision is contrary to law."); *Wong v. Napolitano*, No. CV-08-937, 2010 WL 916274, at *14 (D. Or. Mar. 10, 2010) (discussing the absence of reliance on advice of counsel from the regulation); *Alimoradi v. U.S. Citizenship & Immigration Servs.*, No. CV 08-02529, 2009 WL 8633619, at *6 (C.D. Cal. Feb. 10, 2009) ("It is hard to imagine a circumstance where a person has less control over their employment authorization than when, as with Dr. Alimoradi, his employer's general counsel mistakenly informs him that his employment authorization requirements have been satisfied.").

superfluous the proceedings for deciding asylum application or referring them to immigration court, and would render unnecessary the separate provisions allowing an asylee to become a lawful permanent resident." (*Id.*)  The allegations in Plaintiffs' complaint do not show USCIS's denial of Plaintiff Metwaly's adjustment application violated the INA.

### 3.   Due Process

Plaintiffs also contend Defendants violated the Due Process Clause of the United States Constitution.  (Dkt. 1 at 11–16.)  It is not even clear to the Court what due process violation Plaintiffs assert.  The term "Due Process" only appears in the introduction and count headings in Plaintiffs' complaint.  (*Id.* at 2, 11, 15–16.)  The term is also absent for all briefing on Defendants' motion to dismiss.  (Dkts. 17; 18; 19.)  There thus appears to be no bona fide due process claim.

To the extent there is a due process claim, Plaintiffs seem to be challenging USCIS's decision.  "To establish a due-process violation, the petitioner must show that [he] was deprived of liberty without due process of law and that the purported errors caused [him] substantial prejudice."  *Lapaix v. U.S. Atty. Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010).   The Eleventh Circuit has held that an alien has no

24

constitutionally protected liberty interest in adjustment of status.  *See Ramphal v. U.S. Atty. Gen.*, 631 F. App'x 807, 812 (11th Cir. 2015); *Scheerer v. U.S. Atty. Gen.*, 513 F.3d 1244, 1253 (11th Cir. 2008); *Wallace v. Gonzales*, 463 F.3d 135, 137 (2d Cir. 2006) ("[A]djustment of status is a matter of grace, not of right, and the evaluation of such applications is left to the discretion of the Attorney General."). Because Plaintiffs have no constitutionally protected interest in adjustment of status, they cannot establish a due process violation based on USCIS's decision.

## IV.  Conclusion

Defendants' Motion to Dismiss (Dkt. 17) is **GRANTED**. Plaintiffs' Complaint (Dkt. 1) is **DISMISSED** without prejudice. The Clerk of Court is directed to **CLOSE** this case.

**SO ORDERED** this 8th day of March, 2021.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE